Jennie PICARELLA (Plaintiff), Appellant,

v.

The GREAT ATLANTIC & PACIFIC TEA COMPANY, a Corporation (Defendant), Respondent.

No. 29855.

St. Louis Court of Appeals.

Missouri.

Oct. 7, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 3, 1958.

**644**

Ackerman & Schiller, Paxton H. Ackerman, Clayton, for appellant.

Hocker, Goodwin & MacGreevy, John M. Goodwin, George T. Swartz, St. Louis, for respondent.

DOERNER, Commissioner.

This is an action for damages for personal injuries claimed to have been sustained by the plaintiff when a large bottle of soda fell through a hole in the basket of a shopping cart she was using while selecting groceries in defendant's store. Judgment below was for the defendant, and plaintiff's appeal followed in due course.

Plaintiff then was 47 years old, weighed about 160 pounds, and wore an artificial limb, her left leg having been previously amputated above the knee. She arrived at defendant's supermarket on Saturday, February 4, 1956, at about 3:30 p. m., accompanied by her husband and their two sons, ages 8 and 10. On entering the store her younger son obtained one of a number of shopping carts setting in the front of the store, and wheeled it over to her. As was her custom, because of her physical disability, she used the shopping cart to lean on in walking about the store. The defendant's store was divided into a number of aisles, running in a northerly and southerly direction, and a series of check-out counters were strung in an easterly and westerly direction, near the front or south end of the store.

After obtaining the cart, plaintiff and her family proceeded down aisle number one, the most easterly aisle, where they picked up bread, milk, potato chips, and eggs. At the northern end of that aisle they turned south into aisle two, until they reached the point where the soda was located. Six bottles of Yukon Club soda, each the size of a fifth of a gallon, were selected by plaintiff's husband, who handed them to her, and she placed them standing upright across the back of the shopping basket. From that point the family walked to the southern end of aisle two, and turned northwardly into aisle three. Halfway down aisle three there was a break or passageway into aisle four, into which plaintiff and her family proceeded, and walked southwardly to the shelves where the spices were displayed. Plaintiff testified that as she was looking for her spices, and while holding on to the shopping cart, she felt something fall on the big toe of her right foot. She looked down and saw one of the bottles of soda that had been in the shopping cart lying next to her right foot. Plaintiff and her husband both testified that no one had hit or bumped the basket. Upon examining the basket on the shopping cart, it was then seen, for the first time, that four or five spokes were missing in the back, left hand corner of the basket, resulting in what was referred to in the testimony as a hole or space four or five inches wide.

Plaintiff, corroborated by her husband and elder son, described the basket as being straight sided, and made of wire spokes spaced about one inch apart, running vertically. The four sides of the basket were higher than the soda bottles standing upright in the back of the basket. This type of cart and basket was differentiated by the testimony for plaintiff from the newer type of cart, in which the basket is made of metal rods and has a slanting, hinged back, so that one basket can slide into another, referred to in the evidence as the "nesting" type.

From the spice shelves the cart was wheeled to the check-out counter, where the accident was reported to the girl in the cashier's cage, who in turn called the manager. According to the evidence for the plaintiff, the manager went through the physical motions of attempting to put the bottle of soda in and out of the hole in the basket. Plaintiff's medical evidence showed that the great toe of her right foot was fractured, her foot became swollen and black and blue, and she was disabled for about six weeks.

On behalf of the defendant, Lawrence H. Gusnard, manager of the store, testified that he was in the cage with Mrs. Edith Jepsen, the cashier and bookkeeper, when he heard a crash, as if some bottles had struck the floor and broken, coming from in front of the check stands, whereupon he immediately walked there. A display of bottled beer packaged in bags, each containing six bottles, stacked one on top of the other, had been maintained at check-out stand number four. When he reached it he found that the front end of a shopping cart had been pushed against the bags of beer, some bottles were on the floor, and two were broken. The plaintiff was "right there," and he assumed the cart was hers. He saw the plaintiff's husband, but didn't remember exactly where he was standing. He did not see any children accompanying them. Not over a minute afterwards, plaintiff's husband told him that a soda bottle had struck his wife on her foot. He advised the plaintiff to give her name to Mrs. Jepsen so that a report could be turned into defendant's office. The plaintiff's husband showed him the hole in the back of the basket through which he said the bottle of soda had fallen. He examined it and found a wire missing. Normally, the wires were an inch apart. The cart was quite full of groceries, including, as he remembered, one bottle of soda in the back end of the cart, to the left of the hole. Subsequently, after the cart had been emptied, he took the cart to the soda section, got a bottle of the same kind, and attempted to put it through the hole in the basket, but it would not fit through the hole.

Gusnard directed Timothy Fague, a carry out boy, to clean up the broken bottles and the beer on the floor, and to put the shopping cart in the back of the store. Timothy corroborated the manager as to the beer display having been upset and the broken bottles being on the floor. He identified the shopping cart as one in which the back swings up, and stated that at Gusnard's direction he took the cart to the back room. He saw that there was a "bar or two" missing. Mrs. Jepsen, when called on behalf of defendant, testified that she heard a crash that sounded like breaking glass, which came from the front of the store, but that she continued on with her work and didn't look outside the cage; that Gusnard, who had also been in the cage, left immediately after the crash; and that the next thing she knew about the accident was when a lady approached the cage about fifteen minutes after Gusnard had left, and told her that a bottle had fallen on her foot. She took the lady's name and address.

The identity of the shopping cart and basket thereon which the plaintiff had used was a controverted issue, the plaintiff, her husband, and elder son testifying that all four sides of the basket were straight, that it was made of wire spokes, and that the back was not hinged; while defendant's witnesses Gusnard and Fague testified that the only two kinds of shopping carts in the store on the day in question were the "nest-

ing" type, with the slanting, hinged back, and the "baby cart" type, having a space in back of the basket for a child to sit. Defendant also introduced photographs of the cart it claimed the plaintiff had used, as well as the back of the same cart.

Plaintiff's first assignment of error is that the Court erred in permitting the defendant, over plaintiff's objection, to introduce evidence of new matter in the nature of contributory negligence, since the affirmative defense of contributory negligence was not pleaded. This assignment must be overruled for several reasons. First of all, in its answer, following a general denial, the defendant pleaded "that whatever injuries and damages, if any, plaintiff is alleged to have sustained on the occasion mentioned in her petition were directly caused or contributed to by her own negligence." The allegation that plaintiff's injuries were contributed to by her own negligence was a plea of contributory negligence, though in general terms. State ex rel. Shell Petroleum Corporation v. Hostetter, 348 Mo. 841, 156 S.W.2d 673; Kobusch v. Ruberoid Co., 355 Mo. 48, 194 S.W.2d 911. Plaintiff could, of course, by filing a timely motion, have required the defendant to make a more definite statement as to its plea of contributory negligence. Section 509.310 RSMo 1949, V.A.M.S. Having failed to do so, she may not now complain. The plea made here is distinguishable from the sole cause pleas made in the cases cited by plaintiff Karnes v. Ace Cab Company, Mo.App., 287 S.W.2d 378, and Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743.

Secondly, we are cited to no place in the record where plaintiff objected to the introduction of any evidence of contributory negligence. The only reference made to any objections were those raised during the course of defendant's opening statement, made after plaintiff completed her case, when plaintiff objected to defendant's expectation of proof as to the shopping cart running into the beer display, and as to

plaintiff's ability to see, when she placed the bottle of soda in the basket, that the bottle would go through the hole. The actual motion made by plaintiff at that time was for a mistrial, which was overruled. Plaintiff did state that, in anticipation that defendant's evidence would be along the lines set forth in its opening statement, and to avoid making constantly repeated objections when such evidence was introduced that she would stand "on this objection." Even if this could be considered an anticipatory objection to the evidence referred to, defendant expressly refused to agree to such a procedure, nor did the Court approve it, and it was therefore incumbent upon the plaintiff to make a timely objection when such evidence was offered. Having failed to do so she may not now complain on appeal. Sandler v. Schmidt, Mo.Sup., 263 S.W.2d 35; Hoffman v. St. Louis Public Service Co., Mo.Sup., 255 S.W.2d 736.

Lastly, it is by no means clear from plaintiff's brief whether she is complaining about the admission of the testimony regarding the shopping cart being run into the display of beer, or the testimony regarding the ability of plaintiff to have seen the hole in the basket. If the former evidence that plaintiff was injured in some manner other than that described in her petition would have been admissible under a general denial, for under an answer of that nature a defendant may show that the accident occurred in a different manner than that alleged by the plaintiff. Smith v. St. Louis Public Service Co., Mo.App., 84 S.W.2d 161; Cross v. Wears, Mo.App., 67 S.W.2d 517. If the latter, it was admissible under the general plea of contributory negligence, especially since it was developed on cross-examination of the plaintiff.

Plaintiff's second assignment of error is that the trial court erred in refusing to permit her and her husband to deny, in rebuttal, that their shopping cart had been pushed into the display of beer, as defendant's manager had claimed. After defendant's objection had been sustained, an offer

of proof was made that plaintiff would testify that she had no knowledge that such a display even existed; that she had no knowledge of any display of bottles having been tipped over on the day in question; and "more specifically, that she, Jennie Picarella, who, by innuendo was the one that pushed a cart into the display" (did not do so?). As to plaintiff's husband, the offer was that he did not know of any display of beer nor had he heard any crash of bottles; that he saw no broken bottles on the floor; and that the plaintiff's cart did not collide with such a display. Plaintiff overlooks the fact that in defendant's cross-examination of plaintiff and her husband both had denied that plaintiff's shopping cart had come into contact with any display of beer. In fact, plaintiff had denied seeing any display of beer, and both had denied hearing any bottles fall and break, seeing any broken bottles of beer on the floor near the check-out counter, and seeing anyone cleaning up in that area. Hence such testimony in rebuttal would have been repetitious, and plaintiff was not entitled as a matter of right to put in evidence merely cumulative of that which she and her husband had already given. It rested within the sound discretion of the trial court whether it would permit her to do so. Naylor v. St. Louis Public Service Co., Mo.App., 235 S.W.2d 72; Seibel-Suessdorf Copper & Iron Mfg. Co. v. Manufacturers' R. Co., 230 Mo. 59, 130 S.W. 288.

█ The next assignment of error relates to instructions numbered 4 and 6, given at the request of the defendant. Instruction number 4 informed the jury that if it found from the evidence that the bottle was too large to go through and did not go through any hole in the basket cart being used by plaintiff then its verdict must be for the defendant. As such it was a converse instruction, at least to that part of plaintiff's instruction number 1 which required the jury to find that defendant had furnished plaintiff with a shopping basket from which several wires were missing so that a bottle of soda slipped through the opening and fell on plaintiff's foot. Hence it was properly given. Liebow v. Jones Store Co., Mo.Sup., 303 S.W.2d 660. Instruction number 6 was a contributory negligence instruction, which, in brief, predicated plaintiff's contributory negligence on her action in placing the soda bottle near the hole in the basket after she saw or could have seen the hole, and knew or should have known that the bottle could fall through it.

█ Plaintiff's initial complaints regarding these instructions are not to any error in the issues they propounded, but that they were confusing because of the terminology or phraseology employed. Thus the use of the word "occasion" in the phrase, "* * * if you find and believe from the evidence that on the occasion in question, plaintiff, Jennie Picarella, used a grocery basket constructed of metal rods * * *," is criticized; because, plaintiff contends, it is not clear from the word "occasion" whether it refers to what plaintiff terms the "beer display incident," developed in the defendant's evidence, or what she calls the "spice counter incident" brought out in plaintiff's case. We think that the word referred generally to plaintiff's use of the basket in the defendant's store, and that it was no more confusing, and was akin, to the words "that at the time and place in question" as used in plaintiff's verdict directing instruction number 1. Similarly, plaintiff has picked out of context and criticized various phrases of these two instructions, but we find no merit in her contentions. Read as a whole, as such instructions must be, Sauer v. Winkler, Mo.Sup., 263 S.W.2d 370, Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449, they would be correctly understood by a jury composed of ordinarily intelligent laymen. Furthermore, if plaintiff believed that there was any ambiguity in either of the instructions she should have offered a clarifying or amplifying instruction. Redick v. M. B. Thomas Auto Sales, Inc., 364 Mo. 1174, 273 S.W.2d 228; Nelson v. Tayon, Mo.Sup., 265 S.W.2d 409.

Plaintiff next assigns error in the giving of instruction number 6, not upon any complaint that there was insufficient evidence to take to the jury the question of plaintiff's contributory negligence, but solely upon the ground that it was contradictory to and inconsistent with defendant's own evidence and theory. As stated, plaintiff's evidence was that there was a hole in the shopping basket furnished her by the defendant, of which she was unaware, and that a bottle of soda slipped through the hole and fell on her foot. Defendant's cross-examination of the plaintiff tended to show that the defect in the basket was obvious, that there was nothing which would have prevented her from seeing it, that in going from section to section of the store while doing her shopping she had had sufficient time and opportunity to discover the hole, and that she had placed the bottle of soda in the basket near the hole. However, in its own case its store manager, defendant's only witness on the point, while admitting that there was a small hole in the basket, testified that he had tried to pass a bottle of soda through the space and that it was much too small to permit the bottle to go through. Defendant offered and the court gave instruction number 4, which told the jury that if it found that the bottle was too large to go through and did not go through any hole in the basket then its verdict must be for the defendant. Obviously this instruction was based on and supported by Gusnard's testimony. But the defendant also requested and the court gave instruction number 6, which told the jury that if it found that plaintiff used a basket from which "a portion of the metal rods were missing, which caused a hole in the back side of said basket cart," and that she "knew or should have known that the hole was larger than the bottles and that it was dangerous to place the bottles near the hole, *because the bottles could fall through the hole,* if you so find * * *." The emphasized portion of instruction number 6 was not only not supported by, but was directly contrary to, the testimony of defendant's only witness on the point.

In support of its argument, plaintiff cites the case of Rucker v. Alton R. Co., 343 Mo. 929, 123 S.W.2d 24. That case involved an action to recover for the death of a fifteen year old boy which occurred when the truck he was driving was struck by the defendant's train at a railroad crossing. Defendant had pleaded a general denial together with contributory negligence on the part of the deceased. While the statement of facts does not specifically so state, it implies that plaintiff's witnesses testified that the deceased drove the truck upon the crossing, without stopping, at a rate of speed of four or five miles an hour. Defendant's witnesses, and particularly the engineer of its train, testified that the truck stopped near, at, or on the tracks, and then started forward. Defendant offered and the trial court gave an instruction which told the jury that if it found that the deceased "failed to stop and listen, and that by stopping and listening he could have discovered the train approaching the crossing, in time to avoid being struck and killed by said train, and that such failure, if any, on his part, directly contributed to his death, then plaintiff cannot recover in this case, and your verdict herein must be in favor of the defendant." On appeal, our Supreme Court held that the instruction was prejudicially erroneous on two grounds, first, because it declared as a matter of law that the decedent was negligent in failing to stop before driving upon the tracks; and secondly, because the instruction submitted defendant's case upon a theory which was contradicted by its own evidence. It was there said, 123 S.W.2d loc. cit. 26:

"There is another rule in this state which has been violated by this instruction and that is the rule holding that a litigant cannot submit his case on a theory which contradicts his own positive evidence and theory. Plaintiff's (sic) engineer testified that 'the automobile stopped with the wheels on the west rail of that passing track.' No doubt that is the reason why respondent did not plead a failure to stop. Yet,

this instruction directed a verdict against plaintiff if the automobile 'failed to stop'. Unless there is something in the record to indicate that such evidence was due to mistake, 'a party cannot be permitted * * * to later deny what he, himself, claims to be the truth and that is why he is bound by the evidence of the witnesses he produces to prove the allegations of his pleadings.' Lolordo v. Lacy, 337 Mo. 1097, 88 S.W.2d 353, 355. The respondent here cannot by its evidence take the unequivocal position that the decedent stopped before entering upon the track, and then in its instruction deny recovery by the plaintiff on the ground the decedent failed to stop before entering the crossing. Pentecost v. St. Louis Merchants Bridge Terminal R. Co., 334 Mo. 572, loc. cit. 578, 66 S.W.2d 533; Dilallo v. Lynch, 340 Mo. 82, loc. cit. 87, 88, 101 S.W.2d 7."

Defendant's response to plaintiff's argument is that a defendant is entitled to a contributory negligence instruction where the defense is pleaded and there is evidence to support it; and that if the defendant does not give such an instruction the plaintiff must do so, citing Sanders v. Illinois Central R. Co., 364 Mo. 1010, 270 S.W.2d 731; Dennison v. Whaley, Mo.App., 285 S.W.2d 73; and Montgomery v. Petrus, Mo.App., 307 S.W.2d 24. These cases support the abstract principle of law enunciated, but do not answer the problem presented, for in neither of them was there any question raised as to the contributory negligence instruction being in conflict with and contradictory to defendant's own evidence.

 It has long been the rule in Missouri that contributory negligence is an affirmative defense, and that the burden of proving it is placed upon the defendant, Baker v. Kansas City, Ft. S. & M. R. Co., 147 Mo. 140, 48 S.W. 838, Parsons v. Noel, Mo.Sup., 271 S.W.2d 543, unless it is established as a matter of law by plaintiff's own evidence. Thompson v. Byers Transp. Co.,

362 Mo. 42, 239 S.W.2d 498. Parsons v. Noel, supra. In meeting that burden the defendant is entitled to the benefit of any evidence which it may develop from, or which is given by, plaintiff and his witnesses, for "The plaintiff is entitled to the evidence offered by defendant favorable to his case and vice versa." Barr v. Missouri Pac. R. Co., Mo.Sup., 37 S.W.2d 927, 930; Miller v. Riss & Co., Mo.Sup., 259 S.W.2d 366, 371. This is particularly true where the evidence relied on by one party to aid his case is given by the other, for, generally, a party is bound by his own testimony. Parlow v. Carson-Union-May-Stern Co., Mo.Sup., 310 S.W.2d 877; Andra v. St. Louis Fire Door Co., Mo.Sup., 287 S.W.2d 816. And the principle that a party is bound by his own testimony is recognized and applied in determining whether a plaintiff has been guilty of contributory negligence. Adkins v. Boss, Mo.Sup., 290 S.W.2d 139.

 But the rule that either party is entitled to the benefit of evidence introduced or adduced from the other, and his witnesses, is subject to the qualification that such evidence cannot be used if it contradicts the party's own evidence or is contrary to his theory of the case. Heitz v. Voss Truck Lines, Mo.Sup., 175 S.W.2d 583; Trower v. Missouri-Kansas-Texas R. Co., 347 Mo. 900, 149 S.W.2d 792; Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782. For a litigant will not be heard to deny the truth of a fact which he has asserted. Trower v. Missouri-Kansas-Texas R. Co., supra; Dilallo v. Lynch, 340 Mo. 82, 101 S.W.2d 7; Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600. Thus a plaintiff may not testify that the defendant's street car was approaching at a speed of twenty-five or thirty miles per hour, and be permitted to recover on the defendant's evidence that it was proceeding at a speed of only ten miles per hour. Elkin v. St. Louis Public Service Co., supra. Similarly, when the plaintiff has testified that wooden blocks were used to prevent a fire door being installed from

slipping, it was held reversible error to have given an instruction on behalf of the plaintiff which submitted to the jury the question of whether the defendant had used any means to prevent the door from slipping. Andra v. St. Louis Fire Door Co., supra; and see Ferguson v. Union Electric Co. of Mo., Mo.Sup., 282 S.W.2d 505; Fisher v. Gunn, Mo.Sup., 270 S.W.2d 869; Murray v. St. Louis Transit Co., 176 Mo. 183, 75 S.W. 611; Bean v. St. Louis Public Service Co., supra; De Lorme v. St. Louis Public Service Co., Mo.App., 61 S.W. 2d 247.

▆▆▆▆▆ Here the fundamental theory of defendant's defense was two-fold: first, that the injury to the plaintiff could not have occurred as she claimed it had, by the bottle of soda slipping through a hole in the shopping basket, because the hole was not sufficiently large to have permitted the bottle to have passed through it; and secondly, that whatever injury plaintiff may have sustained occurred as the result of the collision of her shopping cart with the display of beer, rather than from a bottle of soda falling through a hole in her shopping basket. The manager of its store testified positively and unequivocally that he had tried to pass a similar bottle of soda through the opening in the shopping basket plaintiff had used and that the hole was too small for the bottle to go through. Since he was its only witness on the issue, the defendant is bound by his testimony, and is precluded from impeaching him or from otherwise inviting the jury to disregard his testimony. Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W.2d 626; Rodan v. St. Louis Transit Co., 207 Mo. 392, 105 S.W. 1061.

For if, as the cases hold, the plaintiff cannot avail himself of evidence introduced by or adduced from the defendant and his witnesses which is contradictory to his own testimony and the theory of his case, then it should be equally true that the defendant, on the issue of contributory negligence, should not be entitled to avail him-self of the plaintiff's evidence which directly contradicts his own. That is what the Rucker case holds, and so far as we have been able to find it has never been overruled or distinguished. As the last decision of our Supreme Court on the point, we are, of course, required to follow it. A somewhat similar question was raised by the plaintiff in Miller v. Riss & Co., supra, where the plaintiff claimed that the defendant's truck had collided with her husband's car. Defendant's answer was a general denial coupled with a plea that "if a collision did occur" it was caused by the negligence of plaintiff's husband. Defendant offered and the court gave a sole cause instruction predicated on a collision having occurred. On appeal plaintiff complained that the instruction was erroneous because it was contrary to defendant's evidence and theory of the case. The Supreme Court pointed out, first, that the defendant had offered no direct testimony that there was no collision, and that its driver had testified that he didn't know whether or not a collision had occurred; and secondly, that "The defendant offered no instruction authorizing a finding that no collision had in fact occurred." 259 S.W.2d loc. cit. 370. In the case at bar, defendant's manager, as stated, not only testified that the bottle would not go through the hole in the shopping basket, but defendant offered and the court gave instruction number 4, which instructed the jury that if it found that the bottle was too large to pass through and did not go through the hole in the shopping basket, and injure plaintiff, then its verdict must be for the defendant. The inference to be drawn from the Miller case is that if the defendant's evidence had been that no collision had occurred it would have been error to have given the instruction directing a verdict for defendant if the jury found that the collision occurred solely as the result of the negligence of plaintiff's husband. That case may therefore be considered as in accord with the decision reached in the Rucker case.

Defendant's last assignment of error relates to a part of defendant's closing argument, in which counsel referred to instruction number 6. Since we have reached the conclusion that it was error to have submitted that instruction, and the argument complained of is unlikely to arise on a retrial of the case, there would seem to be no necessity to further consider this assignment.

For the reasons stated, the Commissioner recommends that the judgment be reversed and the cause remanded for a new trial.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

The judgment of the Circuit Court of the County of St. Louis is accordingly reversed and the cause remanded for a new trial.

RUDDY, P. J., and ANDERSON and WOLFE, JJ., concur.